**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 10, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

———————————————

ENERGY WEST MINING
COMPANY,

     Petitioner,

v.

DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR;
GORDON R. OLSON,

     Respondents.

No. 25-9535
(Benefits No. 24-0011-BLA)
(Benefits Review Board)

———————————————

**ORDER AND JUDGMENT\***

———————————————

Before **MATHESON**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.

———————————————

Gordon Olson worked as a coal miner for about twenty-five years and developed a respiratory disease. He submitted a claim for benefits under

---

    \* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10th Cir. R. 32.1.

the Black Lung Benefits Act (BLBA). An administrative law judge (ALJ) awarded benefits to Mr. Olson from his employer, Energy West Mining Company. On appeal, the Benefits Review Board (Board) within the U.S. Department of Labor (DOL) affirmed. Energy West now petitions for review. Exercising jurisdiction under 33 U.S.C. § 921(c), we deny the petition.

## I

We first describe the legal framework governing Mr. Olson's claim for BLBA benefits. Then we recount the factual and procedural history.

## A

The BLBA, 30 U.S.C. § 901 *et seq.*, provides benefits to coal miners who are "totally disabled due to pneumoconiosis arising out of employment in . . . coal mines[.]" 30 U.S.C. § 901(a). The BLBA defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." *Id.* § 902(b). "It is caused by inhaling coal dust into the lungs over a long period, and encompasses a cruel set of conditions that afflict a significant percentage of the nation's coal miners with severe, and frequently crippling, chronic respiratory impairment." *Energy W. Mining Co.* v. *Oliver*, 555 F.3d 1211, 1214 (10th Cir. 2009) (internal quotation marks omitted).

To obtain BLBA benefits, a miner must prove: "(1) he or she suffers from pneumoconiosis; (2) the pneumoconiosis arose out of coal mining

2

employment; (3) he or she is totally disabled due to a respiratory or pulmonary impairment; and (4) pneumoconiosis is a substantially contributing cause of his or her total disability." *Antelope Coal Co./Rio Tinto Energy Am.* v. *Goodin*, 743 F.3d 1331, 1335 (10th Cir. 2014); *Energy W. Mining Co.* v. *Est. of Blackburn*, 857 F.3d 817, 821 (10th Cir. 2017) (describing these elements respectively as (1) "*Disease*[,]" (2) "*Disease causation*[,]" (3) "*Disability*[,]" and (4) "*Disability causation*").

"Ordinarily, claimants must prove each of the four elements." *Id.* at 821. Here, the parties have stipulated Mr. Olson "suffers from pneumoconiosis"[1] and his illness "arose out of coal mine employment[.]" RXI.3. This appeal, therefore, involves only the third element (disability) and fourth element (disability causation), as we will discuss.

A claimant who has worked for "fifteen years or more in one or more underground coal mines" and establishes the third element (disability) is

---

[1] Pneumoconiosis has two definitions: "clinical" and "legal." 20 C.F.R. § 718.201(a). Clinical pneumoconiosis refers to "those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." *Id.* § 718.201(a)(1). Legal pneumoconiosis "includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." *Id.* § 718.201(a)(2). The ALJ found Mr. Olson "suffers from simple clinical pneumoconiosis." RXI.49. The parties have not disputed, and their stipulations are consistent with, that finding.

entitled to a "rebuttable presumption" that he or she is "totally disabled due to pneumoconiosis[.]" 30 U.S.C. § 921(c)(4). "In other words, a miner who proves 15 years of coal mine work and total disability is entitled to a [rebuttable] presumption that the remaining [three] elements of his claim are established." *Antelope Coal*, 743 F.3d at 1335. If the claimant satisfies the statutory presumption, the burden shifts to the employer to "rebut the presumption" by disproving that the claimant has or had pneumoconiosis "arising out of coal mine employment" or that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis[.]" 20 C.F.R. § 718.305(d)(1)(i)–(ii). Put differently, the employer can rebut the presumption by disproving one of the three other elements: "Disease, Disease causation, or Disability causation[.]" *Blackburn*, 857 F.3d at 822.

Claims for BLBA benefits "are subject to three levels of administrative review." *Rockwood Cas. Ins. Co.* v. *Dir., OWCP*, 917 F.3d 1198, 1205 (10th Cir. 2019). *First*, the miner files a claim with a district director of the DOL's Office of Workers' Compensation Programs (OWCP), who collects evidence and issues a proposed decision and order on benefits and liability. *See* 20 C.F.R. § 725.401 ("After a claim has been received by the district director, the district director shall take such action as is necessary to develop, process, and make determinations with respect to the claim[.]"); *id.* §§ 725.404–14 (discussing the "[d]evelopment of evidence"

(heading formatting omitted)); *id.* § 725.418(b) (regulating what a "proposed decision and order must contain"). *Second*, the claimant or employer may contest the district director's proposed decision and order by requesting either "a revision" or "a hearing" before an ALJ who reviews evidence and, in turn, issues a decision and order. *Id.* § 725.419(a); *see id.* § 725.455(b) (stating the ALJ "shall receive into evidence the testimony of the witnesses and parties . . . and such additional evidence as may be submitted in accordance with" regulations). *Third*, a party can appeal the ALJ's decision to the Board, which can then issue an order "based upon the hearing record." 33 U.S.C. § 921(b)(3). At the conclusion of this administrative process, a party can petition for review in the "court of appeals for the circuit in which the injury occurred[.]" *Id.* § 921(c).

**B**[2]

Mr. Olson spent over twenty-five years working underground in various mines in Utah. He worked for Energy West for more than a decade before he retired for health reasons on July 31, 2013. His work at Energy

---

[2] We draw these facts from the ALJ's decision and the appellate record, which contains medical opinions, testing, and other evidence presented to the ALJ. *See* 33 U.S.C. § 921(c) (permitting this court to review "a final order of the Board"); 20 C.F.R. § 802.301(b) (preventing the parties from submitting "new evidence to the Board" that was "not part of the record developed at the hearing before the administrative law judge").

West included moving heavy equipment and mining supplies in and out of the mine.

In November 2014, Mr. Olson filed his initial claim for benefits under the BLBA. The district director of OWCP denied his claim several years later, on July 31, 2017, finding Mr. Olson had not shown his pneumoconiosis "caused a breathing impairment of sufficient degree to establish total disability." R.Supp.Dir.963–64.

Mr. Olson then requested a hearing before an ALJ, which was scheduled for July 8, 2019. By DOL regulation, "[t]he record of a hearing closes when the hearing concludes, unless the [ALJ] directs otherwise." 29 C.F.R. § 18.90(a). However, on July 1, a week before the hearing, Energy West filed an unopposed motion to keep the record open until "at least 60 days following the July 8, 2019 hearing for the parties to complete evidentiary development[.]" R.Supp.Main.11. The motion explained "Mr. Olson has had several significant health issues over the last few months[,]" requiring abdominal surgery and follow-up evaluations. R.Supp.Main.13. As a result, the motion stated, "the parties have agreed" to further assessment of Mr. Olson "to complete evidentiary development after the hearing[.]" R.Supp.Main.13. The motion also asked for "an additional 45 days to submit closing arguments" after the submission of the supplemental evidence. R.Supp.Main.11.

The hearing was held on July 8, 2019, as scheduled. The ALJ granted Energy West's motion, setting discovery to close on September 6, 2019 and briefing to conclude on October 25, 2019. The parties then submitted evidence, including results of medical testing and evaluations from five doctors:

- Dr. Barbara Cahill, who examined Mr. Olson at the request of the district director, OWCP;
- Dr. Michael Pearce, Mr. Olson's longtime treating pulmonologist;
- Dr. Shane Gagon, Mr. Olson's longtime primary-care physician; and
- Drs. Robert Farney and Gregory Fino, Energy West's experts.

Relevant here, that evidence included a May 2019 pulmonary-function evaluation conducted by Dr. Pearce just a few weeks after Mr. Olson's abdominal surgery. According to Dr. Pearce, the evaluation showed Mr. Olson's lung capacity had "worsened over the [last] few years" and "his lungs can no longer sustain proper function on exertion and he now requires oxygen 24 hours a day." R.Supp.Cl.8. Mr. Olson also testified at the hearing.

After the hearing, the ALJ allowed Energy West to submit additional evidence, and the parties submitted more briefing. Notably, further testing occurred in July 2019, but due to issues with the testing, neither party ultimately relied on it. Energy West argued that Mr. Olson's May 2019 evaluation was not reliable because it occurred while he was recovering

from abdominal surgery, which might have affected his lung function.[3] The record closed on October 25, 2019.

On April 1, 2021, about seventeen months later, the ALJ issued an order "reopening [the] record for further evidentiary development[.]" R.Supp.Main.88 (heading formatting omitted). The ALJ explained the "probative value of the most recent direct evidence of [Mr. Olson's] pulmonary condition"—from his May 2019 evaluation—"is qualified by the fact that [he] was recovering from recent abdominal surgery at the time." R.Supp.Main.88. Under the circumstances, the ALJ concluded additional medical evidence was needed to determine whether Mr. Olson "suffered at the time of the hearing, or continues to suffer, from a totally disabling respiratory / pulmonary impairment." R.Supp.Main.88 (internal citations omitted).

The order reopening the record said an "ALJ is granted substantial latitude to develop the evidentiary record *sua sponte*, even post-hearing." R.Supp.Main.89. For support, the order cited 20 C.F.R. § 725.455. That regulation provides ALJs with "discretion" over the "conduct of the

---

[3] The appellate record does not contain the parties' closing briefs before the ALJ. But the Board in its decision summarized and cited Energy West's closing brief, and the parties do not take issue with the Board's summary. Accordingly, we rely on the Board's summary to inform our own discussion.

hearing[,]" 20 C.F.R. § 725.455(c), and states an ALJ "shall at the hearing inquire fully into all matters at issue, and shall not be bound by common law or statutory rules of evidence, or by technical or formal rules of procedure" except as provided by statute or regulation, *id.* § 725.455(b). The order also relied on several decisions from federal courts of appeal. Quoting a Third Circuit decision, the order said, "[w]here the ALJ believes additional medical testimony is needed to explain the clinical evidence, an effort to obtain such information should be made, rather than discrediting medical opinions because of its absence." R.Supp.Main.89 (quoting *Kertesz* v. *Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986)).

On June 21, 2021, the parties filed a stipulated joint motion requesting extra time to comply with the order, which the ALJ granted. Mr. Olson submitted a supplemental medical report by Dr. Pearce based on pulmonary-function testing, including a type of test known as a "walk test," from July 2021 as well as a supplemental statement from Dr. Gagon based on medical records from June 2021 and testing from July 2021. According to Dr. Pearce, the results from the July 2021 pulmonary-function test showed "improved" lung capacity since his May 2019 evaluation, but "his symptoms still remain fairly debilitating" and he continues to need supplemental oxygen. R.Supp.Cl.1186. Dr. Pearce recommended he "not return to his former occupation as a coal miner." R.Supp.Cl.1186.

9

Dr. Gagon, based on recent pulmonary-function testing he conducted, concluded Mr. Olson "is totally disabled from working any physical employment, particularly in a coal mine." R.Supp.Cl.1198. Energy West submitted supplemental medical reports from Dr. Farney and Dr. Fino, who opined "Mr. Olson [is] neither partially nor totally disabled from returning to his last mining job." R.Supp.Empl.464. The evidence submitted by both parties was admitted without objection. Both parties then submitted supplemental closing arguments. There, Energy West contended reopening the record had been "unnecessary." RII.4 n.6. The ALJ then re-closed the record and said the matter was ready for decision.

On July 8, 2022, in a written order, the ALJ awarded Mr. Olson benefits under the BLBA. The ALJ explained he had reviewed "the entire record, including all exhibits admitted into evidence[.]" RXI.3. As we detail below, the ALJ considered Dr. Pearce's pulmonary-function tests from May 2019 and July 2021, Dr. Gagon's pulmonary-function testing from July 2021, and Dr. Pearce's direct observations of Mr. Olson's exertional limitations during the exercise-walk test from July 2021. The ALJ also considered that both Drs. Pearce and Gagon had opined Mr. Olson could not continue working as an underground miner. Ultimately, the ALJ concluded Dr. Pearce's medical opinion was entitled to "greater probative weight" than other evidence because it was "well-documented, based on personal

10

observations, [and] well-reasoned[.]" RXI.41. By contrast, the opinions of Drs. Farney and Fino were "entitled to less probative weight than that of Dr. Pearce" because their opinions were "of limited reasoning[,]" RXI.43, while Dr. Gagon's opinion was entitled to "some probative weight" because it was "documented and reasoned[.]" RXI.41. The ALJ also concluded Dr. Cahill's opinion to be "not a well-reasoned or well-documented medical opinion" and thus "entitled to little probative weight[.]" RXI.39. Based on the medical evidence and the weight given to the respective opinions, the ALJ ruled Mr. Olson "established by a preponderance of the evidence that he suffers from a totally disabling respiratory / pulmonary impairment"— *i.e.*, the *disability* element. RXI.43. Because he also established over twenty-five years of underground coal mine employment, the ALJ found Mr. Olson was entitled to the fifteen-year rebuttable presumption under the BLBA. The ALJ further concluded Energy West had failed to rebut the presumption.[4]

Energy West appealed to the Board. It challenged the ALJ's decision to reopen the record *sua sponte*, the conclusion that Mr. Olson established

---

[4] The ALJ awarded Mr. Olson benefits under the BLBA, beginning in November 2014. Benefit payments "begin[] with the month during which eligibility begins." 20 C.F.R. § 725.502(c). The ALJ found "justice under the [BLBA] is best served" with retroactive benefits beginning when Mr. Olson initially filed his claim. RXI.52. Energy West does not make any argument challenging the eligibility date.

disability, and the ALJ's explanations for resolving conflicting evidence. The Board rejected these arguments and affirmed the ALJ's decision and order. Relying in part on 20 C.F.R. § 725.455 and 29 C.F.R. § 18.90, the Board explained an "ALJ is granted broad discretion in resolving procedural and evidentiary issues." RII.5. When "fundamental fairness and due process are not implicated," the Board said, "the decision to reopen the record" is a "procedural issue[] committed to the ALJ's discretion." RII.6. Here, the Board observed, there was no "fundamentally unfair element," RII.6 (quoting *Oliver*, 555 F.3d at 1219) (emphasis omitted), because "the ALJ provided both parties the opportunity to submit new evidence and additional briefing" after Energy West questioned the value of the May 2019 evaluation, RII.6. The Board also affirmed the ALJ's determination that Mr. Olson established total disability, finding the "ALJ's credibility determinations" regarding the medical opinions "are rational and supported by substantial evidence" and Mr. Olson's total disability was "based on the evidence as a whole." RII.14. Finally, the Board rejected Energy West's argument that the ALJ failed to resolve "conflicting evidence," concluding "the ALJ properly considered whether each physician's opinion is reasoned and documented" and also "adequately explained the bases for his credibility determinations." RII.12.

This timely petition for review followed.[5]

## II

Energy West raises three issues in its petition for review. It argues, *first*, the ALJ erred by reopening the record *sua sponte* after the record closed in October 2019; *second*, the ALJ's finding that Mr. Olson established total disability is not supported by substantial evidence; and *third*, the ALJ failed to provide a sufficient explanation for how he resolved conflicting evidence. We discern no error.

---

[5] Before us on appeal is the Board's decision affirming the ALJ order awarding benefits to Mr. Olson. *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a). "Once the Board makes a merits determination, the BLBA allows for only limited judicial review to determine whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and ALJ are rational and consistent with applicable law." *Spring Creek Coal Co.* v. *McLean*, 881 F.3d 1211, 1217 (10th Cir. 2018) (brackets and internal quotation marks omitted). When analyzing a petition like the one here challenging an award of benefits, this court has not always distinguished between the ALJ's first-instance decisions and the Board's review of those decisions. *See, e.g., Blue Mountain Energy* v. *Dir., OWCP*, 805 F.3d 1254, 1259 (10th Cir. 2015); *Oliver*, 555 F.3d at 1218–19. Here, "[a]lthough we are formally reviewing the Review Board's decision," for sake of economy we keep with our precedent in choosing to "focus on the ALJ's decision and analysis." *Antelope Coal*, 743 F.3d at 1341 n.13. And, in any event, we see no difference between the ALJ's order and decision and the Board's decision that would bear on our disposition.

## A

Energy West's challenge to the ALJ's decision to reopen the record *sua sponte* proceeds in two parts.[6] Energy West says, *first*, that decision "exceed[ed] the ALJ's authority," Op. Br. at 12, and *second*, even assuming the ALJ was authorized to reopen the record, the decision to do so here was an abuse of discretion.

---

[6] Mr. Olson argues Energy West failed to "properly preserve[]" its appellate argument because the company failed to "make a timely and specific objection" to reopening the record "before the ALJ[.]" Resp. Br. at 6. We do not agree. In its August 31, 2021 Supplemental Closing Argument, Energy West argued to the ALJ that reopening the record was "unnecessary." RII.4 n.6. Even if that was insufficient to exhaust the argument before the ALJ, Energy West specifically argued to the Board the same argument it presses before this court: "[B]y reopening the record for a do-over[,]" the ALJ "exceeded his authority[.]" RVI.9; *see* RII.4 (Board summarizing Energy West's argument as that "the ALJ has no specific authority . . . to reopen the record, on his own accord"); *see* 20 C.F.R. § 802.211(a) (requiring the parties to identify the "specific issues to be considered on appeal" to the Board). In turn, the Board considered the argument and passed upon it in its order. We have held, in the BLBA context, where "the Board considered and decided [an] issue, this Court can consider it on appeal" even if a party "did not [raise the] challenge before the ALJ[.]" *Wyo. Fuel Co.* v. *Dir., OWCP*, 90 F.3d 1502, 1506 n.5 (10th Cir. 1996); *see Facet Enters., Inc.* v. *N.L.R.B.*, 907 F.2d 963, 972 (10th Cir. 1990) (recognizing, in a different administrative context, a "court may find exhaustion when party did not raise issue before agency if agency considers issue on its own motion"). Accordingly, under the circumstances presented here, we conclude we can review Energy West's argument that the ALJ lacked authority to reopen the record *sua sponte. Cf. Energy W. Mining Co.* v. *Lyle*, 929 F.3d 1202, 1206 (10th Cir. 2019) (holding that we did not have "jurisdiction to consider" an issue because the employer "did not present this challenge to the . . . Board" (heading formatting omitted)).

14

Energy West's first argument raises a question of law that we review *de novo*. *See De Niz Robles* v. *Lynch*, 803 F.3d 1165, 1168 (10th Cir. 2015) (explaining an argument that an agency lacked authority to act "raises a pure question of law we may assess de novo"); *Downs* v. *Dir., OWCP*, 803 F.2d 193, 198 n.11 (5th Cir. 1986) ("The issue of the ALJ's authority is a question of law."); *Sunnyside Coal Co.* v. *Dir., OWCP*, 112 F.4th 902, 910 (10th Cir. 2024) (explaining we review the Board's decision on questions of law *de novo* and "give no deference to the Board's interpretation of the statute, the BLBA"). We review whether the Board's legal conclusions are "rational and consistent with applicable law." *Spring Creek Coal Co.* v. *McLean*, 881 F.3d 1211, 1217 (10th Cir. 2018) (internal quotation marks omitted). Energy West's second argument is reviewed for abuse of discretion. *See Gunderson* v. *U.S. Dep't of Labor*, 601 F.3d 1013, 1021 (10th Cir. 2010) (reviewing an argument challenging an ALJ's decision to exclude evidence for abuse of discretion); *Blue Mountain Energy* v. *Dir., OWCP*, 805 F.3d 1254, 1259 (10th Cir. 2015) (reviewing an ALJ's refusal to grant a motion to reopen the record for abuse of discretion).

Finally, the Administrative Procedure Act (APA) directs "the reviewing court" to take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706. Accordingly, "we may overturn the ALJ's decision only if the error . . . prejudicially affected a substantial right of a party." *Gunderson*,

15

601 F.3d at 1021 (brackets and internal quotation marks omitted); *see also*

*Antelope Coal*, 743 F.3d at 1347 (concluding any alleged error by the ALJ,

including a legal error, was "harmless" because the error "did not affect the

outcome"). "An error is prejudicial only if it can be reasonably concluded

that" absent the error "there would have been a contrary result."

*Gunderson*, 601 F.3d at 1021 (internal quotation marks omitted).

Applying these standards, we reject both arguments.

## 1

Energy West first argues the ALJ's decision to reopen the record

*sua sponte* on April 1, 2021, almost a year-and-a-half after the original

closing of the record in October 2019, "exceed[ed] the ALJ's authority[.]"

Op. Br. at 12. We are not persuaded.

An ALJ has the authority and duty to provide a fair hearing and

develop a full record to support its decisions under the BLBA. The APA

expressly permits ALJs presiding at hearings to "receive relevant evidence"

and "take other action authorized by agency rule[.]" 5 U.S.C. § 556(c)(3),

(11); *see id.* § 556(c) (reiterating ALJ authority over hearings is "[s]ubject to

published rules of the agency and within its powers"). DOL regulations, in

turn, state the "conduct of the hearing and the order in which allegations

and evidence [are] presented shall be within the discretion of the [ALJ.]"

20 C.F.R. § 725.455(c). Critically, regulations expressly recognize "[t]he

16

record of a hearing closes when the hearing concludes, *unless the judge directs otherwise.*" 29 C.F.R. § 18.90(a) (emphasis added). As part of their discretion, ALJs "shall afford the parties an opportunity for a fair hearing[,]" 20 C.F.R. § 725.455(c), and "shall at the hearing inquire fully into all matters at issue," 20 C.F.R. § 725.455(b). While presiding over BLBA cases, ALJs have the power to "[d]o all other things necessary . . . to discharge the duties of the office." *Id.* § 725.351(b)(5).

Consistent with these statutes and regulations, we have recognized an ALJ's "broad authority" over hearings and development of the evidentiary record. *Gunderson*, 601 F.3d at 1021 (internal quotation marks omitted). This authority encompasses an ALJ's "power to make reasonable, nonarbitrary decisions regarding the admission or exclusion of evidence." *Id.* Our sister circuits have recognized an ALJ has broad authority to reopen the record and to obtain additional evidence. *See Kertesz*, 788 F.2d at 163 ("Where the ALJ believes additional medical testimony is needed to explain the clinical evidence, an effort to obtain such information should be made[.]"); *cf. Betty B Coal* v. *Dir., OWCP*, 194 F.3d 491, 501 (4th Cir. 1999) (recognizing ALJs can "exercise their discretion to reopen [the record] when doing this would promote justice"); *Newman* v. *Dir., OWCP*, 745 F.2d 1162, 1165 (8th Cir. 1984) (concluding that "[i]f additional medical evidence is

17

needed" to re-evaluate a BLBA claim on remand, then "administrative decisionmakers . . . should attempt to obtain such evidence").

Reviewing *de novo*, we are persuaded the ALJ had the authority to reopen the record for further evidentiary development after the hearing. As we have explained, regulations make clear that the record of a BLBA-benefits hearing closes "*unless the judge directs otherwise.*" 29 C.F.R. § 18.90(a) (emphasis added). And, while presiding over BLBA cases, ALJs have the power to "[d]o all other things necessary . . . to discharge the duties of the office." *Id.* § 725.351(b)(5). These sources of law support the ALJ's authority to reopen the record after the hearing where, as here, the ALJ deemed additional evidence "necessary" to determine a key issue under the BLBA.[7] *Id.*

Resisting our conclusion, Energy West relies on 20 C.F.R. § 725.475 to argue "it was error for the ALJ to reopen the record." Op. Br. at 11. But that regulation merely states "[h]earings are officially terminated when all the evidence has been received, witnesses heard, pleadings and briefs

---

[7] Energy West also objects to the ALJ's apparent "reli[ance] on dicta" from *Skukan* v. *Consolidation Coal Co.*, 993 F.2d 1228 (6th Cir. 1993), *vacated*, 512 U.S. 1231 (1994), in the order reopening the record, arguing *Skukan* is an "invalid precedent." Op. Br. at 14–15. Even assuming the ALJ's citation to *Skukan* was erroneous, that does not change our conclusion the ALJ has the authority we have described. We reject Energy West's argument that, without *Skukan*, "there is no legal authority to support the reopening." Op. Br. at 15.

18

submitted to the administrative law judge, and the transcript of the proceedings has been printed and delivered to the administrative law judge." 20 C.F.R. § 725.475. The regulation says nothing about an ALJ's authority to reopen the record. Nor does Energy West explain how § 725.475 should be reconciled with 29 C.F.R. § 18.90, which says the record closes when the hearing closes "unless the judge directs otherwise." *See Time Warner Ent. Co., L.P.* v. *Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1050 (10th Cir. 2004) ("As with statutory construction, in interpreting regulations, we strive to construe the text so that all of its provisions are given effect and no part is rendered superfluous.").

Energy West also relies on 20 C.F.R. § 725.476, which states the ALJ "shall issue a decision and order" "[w]ithin 20 days after the official termination of the hearing[,]" to argue the ALJ needed to issue its decision within "20 days after the record closed" originally. Op. Br. at 12. Energy West fails to cite cases supporting its argument that the ALJ's failure to issue a decision within 20 days is reversible error. And, in any event, the Board rejected the same argument Energy West raises here, finding the company "failed to allege any harm arising from any delay[.]" RII.7 n.12; *see* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."). On appeal, Energy West fails to mention, let alone respond to, that conclusion by the Board. *See Am. Petrol. Inst.* v. *U.S. Dep't of Interior*,

19

81 F.4th 1048, 1058 n.5 (10th Cir. 2023) (explaining appellant "waived" an issue "by inadequately developing an argument . . . in its opening brief").

Accordingly, as the Board previously pointed out, Energy West "fails to identify any authority that bars ALJs from reopening the record after it has been closed[.]" RII.5.

### 2

We next turn to Energy West's argument that, even if the ALJ had the authority to reopen the record, it abused its discretion by doing so in this case. As we explain, we discern no abuse of discretion.

To start, the ALJ identified a legitimate reason to reopen the record. Recall, in its closing brief before the ALJ, Energy West argued Mr. Olson's May 2019 pulmonary-function evaluation was unreliable because it occurred while he was recovering from an abdominal surgery that might have affected his lung function. Noting Drs. Pearce and Farney had both commented on this issue, the ALJ concluded it was "not clear whether [Mr. Olson] suffered at the time of the hearing, or continues to suffer," from total disability. R.Supp.Main.88 (internal citations omitted). The ALJ explained he "is granted substantial latitude to develop the evidentiary record *sua sponte*, even post-hearing" and thus ordered the record reopened to provide both parties the opportunity to submit supplemental evidence and briefing. R.Supp.Main.89. Based on this order, it is clear to us the ALJ

20

reopened the record to adhere to his duty to "inquire fully," 20 C.F.R. § 725.455(b), into whether Mr. Olson established total disability. Importantly, after reopening the record, and complying with the regulations, the ALJ provided both parties "an opportunity to offer [supplemental] evidence[.]" 29 C.F.R. § 18.90(b)(2). Indeed, both parties submitted supplemental medical reports and testing, which were admitted without objection, and supplemental closing arguments. We discern no abuse of discretion here.

Energy West's contrary arguments are unavailing. The company insists the ALJ's decision reopening the record was "prejudicial" and "fundamentally unfair[.]" Op. Br. at 12.[8] According to the company, "the ALJ jumped in and acted as if he were a party litigant, rather than just judging the evidence as presented." Op. Br. at 16. Thus, Energy West contends, the "ALJ failed to provide a neutral evaluation of the case[.]"

---

[8] To the extent Energy West attempts to make an argument under the Due Process Clause, we find the company waived any such argument. The only mention of the Due Process Clause in Energy West's opening brief is in a quotation from the Board's decision, and the company does not develop any argument as to a due process violation. *See Blue Mountain Energy*, 805 F.3d at 1259 n.3 (finding "waived" issues appellant "failed to frame and develop" on appeal (internal quotation marks omitted)). Further, even if we reached the merits, we would disagree. Nothing in the record demonstrates the course of this administrative hearing was infected by "some prejudicial, fundamentally unfair element." *Oliver*, 555 F.3d at 1219 (internal quotation marks omitted).

Op. Br. at 18. The record does not support Energy West's position. We discern no error—let alone prejudicial error, 5 U.S.C. § 706—where Energy West was provided a full opportunity to introduce new evidence.[9]

## B

The ALJ concluded Mr. Olson "established by a preponderance of the evidence that he suffers from a totally disabling respiratory impairment[.]" RXI.43. Energy West challenges that determination, contending it is not supported by substantial evidence. We disagree.

## 1

"[O]ur judicial review is limited to whether, based on the record as a whole, substantial evidence supports the factual findings of the ALJ." *Sunnyside Coal*, 112 F.4th at 910 (internal quotation marks omitted).

---

[9] Like the Board, we also note Energy West's litigation conduct in determining the ALJ did not abuse his discretion. Days before the hearing, in July 2019, Energy West filed an unopposed motion requesting the record stay open for a few months "to allow the parties to complete evidentiary development" because both parties wanted time for their experts to comment on additional medical information. R.Supp.Main.12. Then, in its initial closing brief after the hearing, Energy West argued the May 2019 medical evidence was unreliable because Mr. Olson had recently undergone surgery that may have affected his lung function and the process of "healing may take months[.]" RII.3 (quoting Energy West's Closing Brief). At the same time, after the ALJ reopened the record in April 2021, Energy West "utilized the opportunity to submit additional evidence" without mentioning "an objection to the ALJ's order." RII.6 n.10. It was only after submitting additional medical evidence, that Energy West made a "belated, general statement that reopening the record was 'unnecessary'" all along. RII.7 n.10.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hansen* v. *Dir., OWCP*, 984 F.2d 364 (10th Cir. 1993) (internal quotation marks omitted). "In determining whether substantial evidence exists," we "cannot reweigh the evidence"; instead, we "only inquire into the existence of evidence to support the trier of fact." *Id.* at 368 (internal quotation marks omitted).

Recall, to obtain BLBA benefits and to invoke the fifteen-year rebuttable presumption, a miner must establish he suffers from a totally disabling respiratory or pulmonary condition. *See Antelope Coal*, 743 F.3d at 1335. A miner is "totally disabled" if his pulmonary or respiratory condition, standing alone, "prevents . . . the miner . . . [f]rom performing his . . . usual coal mine work" and comparable "gainful employment." 20 C.F.R. § 718.204(b)(1)(i)–(ii). As relevant here, a miner may establish total disability based on pulmonary-function tests or medical opinions. *Id.* § 718.204(b)(2)(i), (iv).

Total disability may be established by medical opinions "if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents . . . the miner from engaging in [his usual] employment." *Id.* § 718.204(b)(2)(iv). "[I]n weighing the opinion of the miner's treating physician[,]" the ALJ "shall" consider four

23

"factors": (1) the "nature" of the physician-miner relationship, and particularly whether the physician "treated the miner for respiratory or pulmonary conditions"; (2) the "[d]uration" or "length" of that treatment relationship; (3) the "frequency of physician-patient visits"; and (4) the "[e]xtent of treatment[,]" including the "types of testing and examinations conducted[.]" 20 C.F.R. § 718.104(d)(1)–(4).

## 2

The ALJ's decision was supported by substantial evidence. Regarding Dr. Pearce's opinion, the ALJ considered that the doctor had been Mr. Olson's treating pulmonologist since 2005. The doctor diagnosed and treated Mr. Olson for reactive airways disease/asthma and had access to a "large amount of medical documentation" about his patient. RXI.39–40. Dr. Pearce also conducted pulmonary-function tests in May 2019 and July 2021 and an exercise walk-test in July 2021. The ALJ found Dr. Pearce's "personal observations" of the walk test "support his earlier opinion that [Mr. Olson]'s breathing impairments alone would prevent [him] from" completing the physical labor of his previous coal mine jobs. RXI.40. The ALJ found Dr. Pearce's medical opinion "well-documented, based on personal observations, well-reasoned and entitled to greater

probative weight than Drs. Cahill, Gagon, Farney or Fino."[10] RXI.41. Ultimately, the ALJ determined how much weight to give the medical opinions and concluded Mr. Olson established he suffers from a totally disabling respiratory or pulmonary impairment by medical opinion evidence.

Urging reversal, Energy West primarily challenges the ALJ's credibility determinations.[11] In Energy West's view, the ALJ should have given less weight to Dr. Gagon's opinion (that Mr. Olson's pulmonary-function tests showed obstructive airway disease) and more weight to the opinions of Drs. Pearce, Fino, and Farney (that Mr. Olson's pulmonary-

---

[10] Regulations support the ALJ's decision to give significant weight to Dr. Pearce. "In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight," so long as "the weight given to the opinion of a miner's treating physician shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole." 20 C.F.R. § 718.104(d)(5).

[11] Energy West contends the ALJ "fail[ed] to apply the correct legal standard." Op. Br. at 27 (heading formatting omitted). According to Energy West, the medical evidence shows only that doctors said returning to coal-mine employment would be inadvisable, but "[i]nadvisability of returning to coal mine employment because of pneumoconiosis does not constitute a finding of total disability." Op. Br. at 27, 29. Reviewing this claim of legal error *de novo*, we reject it for the same reason the Board did: "the ALJ did not rely on this aspect of their opinions [in his] finding of total disability." RII.12; *see* RXI.40–41. To the extent Energy West's argument is really about how the ALJ evaluated the credibility of the doctors, this argument lacks merit, as we have explained.

25

function tests yielded normal results). This argument is unavailing. "[I]t is 'the sole province of the ALJ' to weigh conflicting medical evidence." *Sunnyside Coal*, 112 F.4th at 910 (quoting *Spring Creek Coal*, 881 F.3d at 1217). We "cannot substitute [our] assessment of the credibility of experts for that of the ALJ[.]" *Oliver*, 555 F.3d at 1218–19. After all, when "medical professionals are in disagreement," the ALJ "is in a unique position to determine credibility and weigh the evidence." *Hansen*, 984 F.2d at 370; *see id.* (concluding "the Board properly affirmed that ALJ's order" because the ALJ's determination was supported by "substantial though conflicting evidence"). Based on the record before us, we affirm the Board's conclusion "that the ALJ's decision was supported by substantial evidence." *Id.* at 368.

## C

Finally, we consider Energy West's argument that the ALJ failed its duty under the APA to provide a sufficient explanation for the total-disability determination.[12] A challenge to the sufficiency of an ALJ's explanation "raises a legal question that we review de novo." *Gunderson*, 601 F.3d at 1021. We discern no error.

---

[12] This failure-to-explain argument is preserved for our review, and Energy West does not argue otherwise.

26

**1**

Section 557(c)(3)(A) of the APA provides all agency "decisions, including initial, recommended, and tentative decisions, are a part of the record and shall include a statement of . . . findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record[.]" 5 U.S.C. § 557(c)(3)(A). This is known as the "reasoned explanation requirement," *Gunderson*, 601 F.3d at 1022 (bolding omitted), which "requires an agency's adjudicative decision to be 'accompanied by a clear and satisfactory explication of the basis on which it rests[,]'" *Gunderson*, 601 F.3d at 1022 (quoting *Barren Creek Coal Co.* v. *Witmer*, 111 F.3d 352, 356 (3d Cir. 1997)).

The ALJ's duty to provide a reasoned explanation takes on "added importance" in cases involving "medical or scientific evidence[.]" *Id.* In such cases, a "scientific dispute must be resolved on scientific grounds"— meaning an ALJ is required to "articulate a reason and provide support for favoring one opinion over another." *Id.* (internal quotation marks omitted). "The ALJ's task is not to resolve general scientific controversies, but instead to determine the facts of the case at hand and apply the law accordingly." *Id.* at 1024. Nor is the "duty of explanation" intended to be "a mandate for administrative verbosity or pedantry." *Id.* at 1022 (internal quotation marks omitted). As long as we "can discern what the ALJ did and why he

27

did it, the duty of explanation is satisfied." *Id.* (internal quotation marks omitted).

2

The ALJ satisfied its duty to explain its decision. Energy West argues otherwise, insisting the ALJ did not explain how he resolved conflicts in the medical evidence. We disagree.

*First*, Energy West says the ALJ failed to explain why he chose to credit Dr. Pearce's observations from the July 2021 walk test over the opinions from Energy West's experts, Drs. Farney and Fino, who called the walk test insufficiently reliable to show disability.[13] The Board rejected this argument, holding "[a]ny alleged error is harmless" because the ALJ "specifically relied on Dr. Pearce's direct observations of [Mr. Olson]'s 'exertional limitations due to respiratory distress' during the walk test as opposed to only the specific measurements of the tests." RII.13 (quoting RXI.43). On appeal, Energy West mentions the Board's holding, but never explains why the Board's reasoning was erroneous. *See Adams* v. *Fed.*

---

[13] Energy West claims the "Board fail[ed] to address" its challenge to the ALJ's reliance on Dr. Pearce's walk test. Op. Br. at 26. Not so. The Board rejected Energy West's argument, explaining that "the ALJ specifically relied on Dr. Pearce's direct observations of [Mr. Olson's] exertional limitations due to respiratory distress during the walk test as opposed to only the specific measurement results of the tests." RII.13 (internal quotation marks omitted).

*Aviation Admin.*, 168 F.4th 1271, 1286 (10th Cir. 2026) ("We have routinely held we will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation[.]" (internal quotation marks omitted)). In any event, the ALJ thoroughly explained why he credited Dr. Pearce's opinion—because of Dr. Pearce's experience as Mr. Olson's "longtime treating pulmonologist" and because his conclusions were based on "direct observations" of Mr. Olson's "exertional limitations due to respiratory distress[.]" RXI.43. Noting those "personal observations . . . support [Dr. Pearce's] earlier opinion that [Mr. Olson's] breathing impairments alone would prevent" Mr. Olson from returning to physical labor, RXI.40, the ALJ concluded Dr. Pearce's opinion was "well-documented" and "well-reasoned[.]" RXI.41. By contrast, the ALJ explained the opinions of Drs. Farney and Fino on total disability were "of limited reasoning and entitled to less probative weight than that of Dr. Pearce." RXI.43. This explanation satisfies the ALJ's duty to "articulate a reason and provide support for favoring one opinion over another." *Gunderson*, 601 F.3d at 1022 (internal quotation marks omitted).

*Second*, Energy West contends the ALJ failed to explain an "obvious inconsistency" between Dr. Gagon's "poorly explained and poorly documented" opinion that Mr. Olson suffered from obstructive lung disease, Op. Br. at 22, and the ALJ's conclusion Dr. Gagon's opinions "are entitled

29

to some probative weight[,]" RXI.41. We see no inconsistency. The ALJ found Dr. Gagon's opinions "are well-documented but are limited in reasoning" and therefore "are entitled to limited probative weight[.]" RXI.51. Accordingly, the ALJ gave "greater weight to the well-documented and well-reasoned medical opinions of Dr. Pearce[.]" RXI.51.

*Third*, Energy West contends the ALJ failed to explain how Mr. Olson's testimony concerning his "complicated medical history" "impacted" the ALJ's consideration of the medical opinions. Op. Br. at 20. We are not persuaded. The record shows the ALJ considered Mr. Olson's testimony together with the medical opinion evidence. *See* RXI.14–43. Reviewing "the evidence in toto[,]" the ALJ explained in detail its conclusions in light of the "probative weight" it gave to each source of evidence. RXI.43 (heading formatting omitted).

*Finally*, Energy West argues the ALJ failed to explain why he discredited Dr. Cahill's opinion that Mr. Olson "should not return to underground mining work" to "avoid further coal dust or other dust exposure[,]" RXI.15–16, but not the opinions of Drs. Gagon and Pearce who made similar statements about avoiding further exposure. This argument is also unavailing. Finding that Dr. Cahill's opinion was "not a well-reasoned or well-documented medical opinion[,]" the ALJ determined the opinion "is entitled to little probative weight on the issue" of total

30

disability. RXI.39. As we have discussed, the ALJ further explained why he found Dr. Pearce's opinion "more persuasive[,]" *Est. of Blackburn*, 857 F.3d at 823 & n.8, than the opinions of Drs. Cahill, Farney, and Fino.

Based on this record, the ALJ satisfied the reasoned-explanation requirement. *See Gunderson*, 601 F.3d at 1022.

## III[14]

We **DENY** Energy West's petition for review.


Entered for the Court


Veronica S. Rossman
Circuit Judge

---

[14] Energy West wholly fails to develop any argument that the ALJ or Board's supposed errors were prejudicial under 5 U.S.C. § 706. We have explained, in the BLBA context, "we may overturn the ALJ's decision only if [absent] the error . . . it can be reasonably concluded . . . there would have been a contrary result." *Gunderson*, 601 F.3d at 1021 (internal quotation marks omitted); *see Hillsdale Envt'l Loss Prevention, Inc.* v. *U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1165 (10th Cir. 2012) ("[E]ven if an agency violates the APA, its error does not require reversal unless a plaintiff demonstrates prejudice resulting from the error."). "In civil cases such as this, the party challenging the action below bears the burden of establishing that the error prejudiced that party." *St. Anthony Hosp.* v. *U.S. Dep't of Health & Hum. Servs.*, 309 F.3d 680, 691 (10th Cir. 2002) (discussing § 706). "Arguments inadequately briefed in the opening brief are waived[.]" *Adams*, 168 F.4th at 1285 (internal quotation marks omitted). Energy West's failure to carry its burden on prejudice under § 706 offers another basis to conclude the petition for review must be denied.